UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURIE BOYER | ) |
| | ) |
| and | ) |
| | ) CASENO: 4:11CV01173 HEA |
| PATRICIA SUSAN BOYER | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| SCOTT BROTHERS INVESTMENT | ) |
| CORPORATION, d/b/a Waterways | ) |
| Apartments of Lake St. Louis, | ) |
| | ) |
| Defendant. | ) |

## MOTION TO DISMISS

COMES NOW Defendant, Scott Brothers Investment Corporation, d/b/a Waterways Apartments of Lake St. Louis, and for their Motion to Dismiss, states to the Court as follows:

## STATEMENT OF FACTS

1. On or about December 29, 2010, the Plaintiffs contacted Defendant regarding renting an apartment. At the lease signing, Plaintiffs told Defendant that their dog was a service animal for Laurie Boyer's disabilities.

2. Because the Plaintiff's disabilities are not obvious, Defendant reasonably requested a doctor's note in order to accommodate Plaintiffs' requests. Plaintiffs were told that no rent or additional security deposit would be charged for the service animal.

3. Plaintiffs were charged for their pet cats, but not for the dog which was claimed to be a service animal.

4. Plaintiffs took possession of the premises on or about January 3, 2011.

5. On or about April 1, 2011, Defendant's leasing agent again contacted Plaintiffs to remind them that a doctor's note would be required to make an accommodation for a service animal.

6. Despite Defendant's good faith effort to open a dialogue designed to accommodate the Plaintiffs, Plaintiffs refused to provide any information to the Defendant regarding the dog.

7. Plaintiffs have a history of making unsubstantiated claims to the Defendant, as is evidenced by the allegations contained in their Petition, including but not limited to their claim that their neighbors are manufacturing methamphetamines.

8. Defendant denies demanding the medical records of Plaintiffs, and Plaintiffs have not tendered a doctor's note to provide information regarding the claimed service dog. Such a note, if provided, would have been sufficient to provide a reasonable accommodation.

9. Because Plaintiff's disability is not obvious, and no proof of the necessity of a reasonable accommodation was provided when requested, Defendant was forced to assume that Plaintiffs' animal was a unauthorized pet and not a service animal.

10. Defendant sent Plaintiffs a termination letter on May 27, 2011. Defendant's letter stated that Plaintiffs' lease was terminated for lease violations of disturbing the rights, comfort and safety of other residents, AND for possessing an unauthorized pet. A copy of the termination letter is attached as Exhibit A.

11. Defendant filed case number 1111-CV06124 in the St. Charles County Associate Division against Plaintiffs for Unlawful Detainer on July 05, 2011. This action is still pending.

12. It was not until after Plaintiffs filed their Petition and Motion for a Temporary Restraining Order with this Court did Plaintiffs actually provide Defendants with a healthcare provider's note. This note, provided after this litigation was commenced, appears to be authentic and would have satisfied Defendant's reasonable requests.

13. Plaintiffs are still in possession of the premises.

## ARGUMENTS:

### I. Plaintiffs' claim should be dismissed for lack of ripeness and jurisdiction.

1. Plaintiffs' claims derive from issues which are solely grounded in state law. The Associate Division of the St. Charles County Courts is the proper jurisdiction for the determination of the status of Defendant's claim for Unlawful Detainer.

2. Because Plaintiffs have not vacated the premises or been evicted, they have not suffered an injury or actual discrimination sufficient to give rise to a Fair Housing Act (FHA) discrimination claim. At this point, there is no claim or controversy ripe for judicial determination by this court.

3. Plaintiff Patricia Susan Boyer has made no recognizable claim under the FHA, and should be dismissed for lack of jurisdiction.

4. Plaintiffs' lawsuit here is merely retaliation for the filing of the Unlawful Detainer case in St. Charles County.

5. Plaintiffs' request for a temporary restraining order is also inappropriate in this case. Plaintiffs have adequate remedy in the St. Charles County Court case.

II. **Plaintiffs' claim should be dismissed for failure to state a claim under the Fair Housing Act which would entitle them to relief. As defined by the FHA, Plaintiff Laurie Boyer is not disabled.**

1. Plaintiffs' Petition alleges that the Defendant failed to make reasonable accommodations to a person with disabilities in violation of the Fair Housing Act as codified in 42 U.S.C. 3604.

2. "An animal qualifies as a reasonable accommodation if: (1) An individual has a disability, as defined in the Fair Housing Act or Section 504. (2) the animal is needed to assist with the disability, and (3) the individual who requests the reasonable accommodation demonstrates that there is a relationship between the disability and the assistance that the animal provides." *Department of Housing and Urban Development, Pet Ownership for the Elderly and Persons with Disabilities: Final Rule, 24 CFR Part 5 (2008)*

3. However, having a physical or mental disability is not the same as being "disabled" under the FHA.

4. The FHA defines a person with a handicap (or disability) to include "(1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; and (3) individuals with a record of such impairment." *42 USC 3602(h)*.

5. The FHA and American with Disabilities Act defines "major life activities" to mean functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations under the Fair Housing Act. (2004)*. For additional discussion, also See *Rose v. Springfield-Greene County Health Department. 668 F.Supp.2d 1206, 1212-13* (Mo. App. W.D. 2009).

6. The court in *Cooper v. Olin Corp.* adds "as well as sitting, standing, lifting, and reaching…" to the definition of major life activities. 246 F.3d 1083, 1088. (8th Cir. 2001)

7. Plaintiff Laurie Boyer fails to meet the requirements of criteria (1). Plaintiffs' Petition lists Post-Traumatic Stress Disorder, anxiety, depression, and other unnamed physical and mental disabilities. However, Plaintiffs has provided no proof that the listed impairments "substantially limits one or more major life activities" as defined by HUD and the DOJ.

8. Plaintiff's claimed impairments are not obvious to Defendant. These impairments have not manifested themselves to the point where Defendant knew or should have known of Plaintiff's claimed disabilities as provided by requirement (2). Courts and the Department of Justice suggest that disabilities which qualify as obvious impairments are those which require something like the full-time use of a wheelchair or arm braces.

9. Plaintiffs have not provided Defendant with any record of impairment as provided by requirement (3) and as evidenced by such things as a doctor's note.

10. Therefore, Plaintiffs cannot claim to be disabled under the FHA because the Plaintiffs have failed to prove that her claimed disabilities substantially impair her major life activities. Plaintiffs have also failed to prove that the Defendant knew or should have known about her non-obvious disabilities.

11. Futhert

## III. Plaintiffs' claim should be dismissed for failure to state a claim under the FHA. A landlord merely requesting information necessary to evaluate the necessity of the accommodation does not violate the FHA.

1. Plaintiffs Petition in paragraphs 19-21 alleges that Defendant has violated the FHA by merely requesting information regarding the nature and training of Plaintiff's claimed "service" dog. Plaintiffs' Petition misstates the FHA's position on information requests.

2. Normally, a housing provider cannot request information regarding the nature or severity of an individual's disability. *Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations under the Fair Housing Act. (2004)*

3. However, "housing providers are entitled to verify the existence of the disability, and the need for the accommodation— if either is not readily apparent. Accordingly, persons who are seeking a reasonable accommodation for an emotional support animal may be required to provide documentation from a physician, psychiatrist, social worker, or other mental health professional that the animal provides support that alleviates at least one of the identified symptoms or effects of the existing disability." *Department of Housing and Urban*

*Development. Pet Ownership for the Elderly and Persons with Disabilities: Final Rule, 24 CFR Part 5 (2008)*

4. "[I]n response to a request for reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability[1], (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation." *Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations under the Fair Housing Act. (2004)*

5. The Department of Housing and Urban Development (HUD) provides a sample doctor's letter that is sufficient to satisfy any request for information regarding a reasonable accommodation. The Sample Letter is attached as Exhibit B.

6. Defendant was attempting to open a reasonable and permissible dialogue to evaluate the reasonableness of Plaintiffs' requested accommodations. Defendant's request was not intrusive, burdensome, or unreasonable. A doctor's note or any verification of the need for reasonable accommodation was requested. Defendant would have provided accommodations if <u>any</u> reliable disability-related information was provided.

7. Plaintiffs refused and failed to provide any of the requested information.

8. It was not until after Plaintiffs filed their Petition and Motion for a Temporary Restraining Order did Plaintiffs actually provide Defendants with a healthcare provider's note. This note, provided after this litigation was commenced, appears to be authentic and would have satisfied Defendant's reasonable requests.

---

[1] (*i.e.*, has a physical or mental impairment that substantially limits one or more major life activities)

9. Defendant could not provide reasonable accommodation without the requested information. Allowing anyone to claim "service dog" status for their pets without some verification would defeat Defendant's legitimate interest in maintaining their reasonable pet policy and is not required by the FHA.

10. Defendant has fully complied with the FHA requirements, and therefore Plaintiffs' claims should be dismissed for failure to state a claim.

## IV. Plaintiffs' claim should be dismissed for failure to state a claim. Plaintiffs' dog is not a "service animal" or "assistance animal" as defined and protected under the FHA, but rather is a personal pet not protected by the FHA.

1. With regards to a whether the animal is a service dog, Plaintiffs has refused to answer whether the dog is a trained service dog, or what tasks the dog can perform. Defendant has no information regarding whether the dog is being or has been individually trained to do work or perform tasks to benefit a particular person with a disability.

2. Additionally, "under both the Fair Housing Act and Section 504, in order for a requested accommodation to qualify as a reasonable accommodation, the requester must have a disability, and the accommodation must be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling." *Department of Housing and Urban Development, Pet Ownership for the Elderly and Persons with Disabilities; Final Rule, 24 CFR Part 5 (2008).*

3. Plaintiffs has failed to show how that pet would afford her an "equal opportunity to use and enjoy" the dwelling.

4.  To show that a requested accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the person's disability. Thus, in the case of assistance/service animals, an individual with a disability must demonstrate a nexus between his or her disability and the function the service animal provides. *Department of Housing and Urban Development, Pet Ownership for the Elderly and Persons with Disabilities: Final Rule*, 24 CFR Part 5 (2008).

5.  Courts have consistently held that a tenant requesting an emotional support animal as a reasonable accommodation must demonstrate a relationship between his or her ability to function and the companionship of the animal. *See, e.g., Majors v. Housing Authority of the County of Dekalb*, 652 F.2d 454 (5th Cir. 1981); *Housing Authority of the City of New London v. Tarrant*, 1997 Conn. Super. LEXIS 120 (Conn. Super. Ct. Jan. 14, 1997); *Whittier Terrace v. Hampshire*, 532 N.E.2d 712 (Mass. App. Ct. 1989); *Durkee v. Staszak*, 636 N.Y.S.2d 880 (N.Y.App.Div. 1996); *Crossroads Apartments v. LeBoo*, 578 N.Y.S.2d 1004 (City Court of Rochester, N.Y. 1991).

6.  Plaintiffs has failed or refused to provide reasonable and reliable information that would confirm that the animal is anything other than a regular pet.

7.  Additionally, Missouri law, in RSMo §209.200(2), defines a "service dog" as "a dog that is being or has been specially trained to do work or perform tasks which benefit a particular person with a disability." Per the statute, Service dogs also include: Guide dogs, Hearing dogs, Medical alert or respond dogs, and Mobility dogs.

8. Comfort, Companion, or Emotional Support dogs do not qualify under Missouri law as "Service dogs". Missouri law does not provide housing protections for these other types of dogs.

WHEREFORE, Defendant respectfully requests this Court dismiss Plaintiffs' Petition, at Plaintiffs' costs, pay Defendant's reasonable attorney's fees, and for any other relief as this Court deems just and proper.

Respectfully submitted,
KRUSE, REINKER, & HAMILTON, L.L.C.

_____/S/Randall J. Reinker_____
Randall J. Reinker, #4150
Attorney for Plaintiffs
2016 S. Big Bend Blvd.
St. Louis, Missouri 63117
(314) 333-4140; Facsimile: (314) 754-2621
randallr@krhlawfirm.com
seano@krhlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing entry of Appearance was served by prepaid U.S. Mail on all parties of record in this cause, on this 19th day of August, 2011.

_____/S/Randall J. Reinker_____



DEFENDANT'S EXHIBIT A

# KRUSE, REINKER & HAMILTON, L.L.C.

ATTORNEYS AT LAW
7916 SOUTH BIG BEND BOULEVARD
ST. LOUIS (RICHMOND HEIGHTS), MISSOURI 63117-2404
TELEPHONE: (314) 333-4143 DIRECT FAX (314) 754-2621

COLLECTION - TENANT LINE (314) 333-4146                    EMAIL: randallr@krhlawfirm.com

May 27, 2011

Laurie Boyer, Pat Boyer and all other occupants
15102 Huzzah Drive
Lake St. Louis, MO 63367

Re: Lease Termination Notice

Dear Laurie Boyer, Pat Boyer and all other occupants:

This law firm represents The Waterway of Lake St. Louis and Scott Brothers Investment Corportion. You are hereby notified that The Waterway of Lake St. Louis and Scott Brothers Investment Corportion is exercising its right to terminate your lease concerning 15102 Huzzah Drive, Lake St. Louis, MO 63367 pursuant to paragraph 23 of your lease. Additionally, you have violated your lease by disturbing the rights, comfort and safety of other residents, and you have an unauthorized pet.

You have until June 30, 2011 to vacate the premises and to return all keys to your landlord. In no way does this relieve you of the amounts due to The Waterway of Lake St. Louis and Scott Brothers Investment Corportion. All questions concerning this matter should be directed to Randall J. Reinker, Attorney at Law, 314-333-4146.

Sincerely,

Randall J. Reinker

RJR/smf
cc: The Waterway of Lake St. Louis

"If any portion of this claim is disputed, you are to notify us within 30 days indicating the nature of this dispute. If you do not indicate a dispute, in writing, within that time, we will assume the claim to be valid. If you indicate a dispute, we will provide you with evidence concerning the validity of that debt. This office will provide you with the name and address of the original creditor, if different from the current creditor. The fact that you have 30 days to indicate a dispute may not prevent us from filing a lawsuit within that time. This is an attempt to collect a debt. Any information obtained will be used for that purpose."



*Sample letter for Companion Animal*

DATE

NAME OF PROFESSIONAL (therapist, physician, psychiatrist, rehabilitation counselor)
ADDRESS

Dear [HOUSING AUTHROITY/LANDLORD]:

[NAME OF TENANT] is my patient, and has been under my care since [DATE]. I am intimately familiar with his/her history and with the functional limitations imposed by his/her disability. He/She meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973.

Due to mental illness, [FIRST NAME] has certain limitations regarding [SOCIAL INTERACTION/COPING WITH STRESS/ANXIETY, ETC]. In order to help alleviate these difficulties, and to enhance his/her ability to live independently and to fully use and enjoy the dwelling unit you own and/or administer, I am prescribing an emotional support animal that will assist [FIRST NAME] in coping with his/her disability.

I am familiar with the voluminous professional literature concerning the therapeutic benefits of assistance animals for people with disabilities such as that experienced by [FIRST NAME]. Upon request, I will share citations to relevant studies, and would be happy to answer other questions you may have concerning my recommendation that [FULL NAME OF TENANT] have an emotional support animal. Should you have additional question, please do not hesitate to contact me.

Sincerely,
*Signature*



[NAME OF PROFESSIONAL]