UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURIE BOYER and PATRICIA SUSAN BOYER, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No.  4:11CV1173 HEA ) |
| SCOTT BROTHERS INVESTMENT CORPORATION, d/b/a Waterways Apartments of Lake St. Louis | ) ) ) ) |
| Defendant. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 5]. Defendants oppose the Motion. The Court conducted a hearing on the Motion on August 22, 2011. Evidence was presented in the form of testimony from Plaintiffs. For the reasons set forth below, the Motion is denied, without prejudice.

**Facts and Background**[1]

Plaintiffs filed this action on July 5, 2011, alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. The Complaint alleges the following facts:

---

[1] The recitation of facts is set forth for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

Plaintiff Laurie Boyer is a 23 year-old woman with Post Traumatic Stress Disorder, anxiety, depression, and other physical and mental disabilities. Her medical providers prescribed a service and companion dog as a means of therapeutic treatment and to cope with life.

Plaintiffs allege Defendant has discriminated against Plaintiff Laurie Boyer, retaliated against her and her mother, and failed to accommodate a reasonable service animal request. Plaintiffs further allege Defendant has inquired into Laurie Boyer's disability in manner which violates federal fair housing laws.

Plaintiffs live at 15102 Huzzah Drive, Lake Saint Louis, Missouri 63367 (the "apartment"), which is part of the Waterways Apartments of Lake St. Louis, managed by Defendant.   Plaintiffs have lived in the apartment since January 3, 2011.

When applying for the lease, Laurie Boyer requested a reasonable accommodation from Defendant.  She informed Defendant that she has a doctor-prescribed service and companion animal.  The Complaint alleges that Plaintiff's dog calms her and is individually trained to provide seizure alert services.  Plaintiff needs her service animal for emotional support and seizure alert-related tasks.

When Defendant then drafted the lease (the "Lease Agreement"), it identified Laurie's three pet cats, but did not identify the service dog. Defendant then charged Plaintiffs additional rent and deposits for three pets.

- 2 -

Defendant's stated policy is to not consider service or assistance animals in connection with its pet policy. According to the Lease Agreement, animals used for disability are not considered under [the pet] policy.

Plaintiffs further allege that soon after they moved in to the apartment, the tenants directly above the apartment began to engage in unreasonable conduct including smoking against municipal law and apartment-wide policy, urinating off the deck, and throwing lit cigarette butts on Laurie from the deck above. Additionally, acrid smells and fumes emanated from the upstairs tenant apartment. Plaintiffs believe the said tenants were using their apartment to manufacture methamphetamine. Plaintiffs further allege Defendant knew this.

Plaintiff Patricia Susan Boyer reported to authorities her suspicion of methamphetamine production in the upstairs apartment. Defendant allegedly knew that Boyer complained to authorities.

Plaintiff Patricia Susan Boyer also complained to Defendant about the nuisance, and explained that the fumes and smoke were extremely irritable to Laurie's service dog. Plaintiffs content that in retaliation, Defendant first began to make inquiry and ask questions about the service dog and demanded medical records of Laurie Boyer to prove that she had a disability. Plaintiffs offered to provide a doctor's letter if Defendant would agree to keep the records confidential.

Rather than agree to keep Laurie Boyer's sensitive private health information confidential, Defendant used its attorney to send a "termination" letter. As ostensible cause for termination, Defendant claimed that Plaintiffs had an "unauthorized pet."

Plaintiffs allege they have no adequate remedy at law, and that Defendant has violated the FHA by:

Discriminating in the sale and/or rental of, or otherwise making unavailable, a dwelling because of handicap, in violation of 42 U.S.C. §3604(f)(1); discriminating in the terms, conditions, or privileges of a sale and/or a rental of a dwelling because of a handicap, in violation of 42 U.S.C. §3604(f)(2); refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §3604(f)(3)(b); providing a hostile housing environment; intimidating, coercing, threatening and interfering with Plaintiffs' advocacy of disability rights and exercise and enjoyment of the right to maintain confidentiality with respect to personal, protected health information;
enforcing a no unauthorized pet rule against a service and companion animal;
enforcing no unauthorized pet rule after authorizing 3 pets, at a time when only two animals occupied the apartment; retaliating against Plaintiffs for complaining about unlawful activities and unreasonable conduct, and its impact on their service and

companion animal; and making an unlawful inquiry to determine whether Laurie Boyer had a handicap, and the nature and severity of the handicap.

Plaintiffs further allege Defendant owed them a duty to operate the housing program at Waterways apartments in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline its employees and agents to fulfill that duty.  It is claimed that Defendant negligently breached that duty by discriminating against Plaintiffs on account of Laurie's disability and exercise of federal and state rights.

Plaintiffs seek a temporary restraining order and preliminary injunction enjoining Defendant from prosecuting the unlawful detainer action Defendant brought in the Circuit Court of St Charles County, Missouri.

## Discussion

The clear, relevant factors to consider when assessing the propriety of temporary restraining orders and preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest.  *CDI Energy Services v. West River Pumps, Inc.*, 567 F.3d 398, 401 -402 (8th Cir. 2009), citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th

Cir. 1981).  The party seeking injunctive relief bears the burden of proving these factors.  *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir.2006).

Plaintiffs contend that Defendant is in violation of the Fair Housing Act by discriminating against Laurie Boyer because of her disabilities.  Plaintiffs further allege that Defendant is violating the Fair Housing Act as applied to Plaintiff Patricia Susan Boyer since she resides with Plaintiff Laurie.

Congress enacted the Fair Housing Act ("FHA") in 1968, making it illegal to discriminate, in housing practices, on the basis of race or national origin.  See 42 U.S.C. 3601 *et seq*.  In 1988, Congress amended the Act so as to extend protection of the FHA to include people with disabilities.  42 U.S.C. § 3604(f).  Under the FHA it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2).

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendant's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. A plaintiff seeking preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374 (2008). Significantly, the Eighth Circuit has consistently held that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *General Motors Corp v. Harry Brown', LLC*, 563 F.3d 312, 319 (8th Cir. 2009). An irreparable injury is an injury "of such a nature that money damages alone do not provide adequate relief." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir.2008). If damages will adequately compensate plaintiffs for their injury, injunctive relief is not appropriate. See *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir.2003).

It is well established that the absence of a finding of irreparable injury is alone sufficient ground for denying a preliminary injunction. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003); see also *General Motors Corp.,* 563 F.3d at 319; *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been

irreparable harm and inadequacy of legal remedies."); *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996); "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999) (quoting *Beacon Theatres,* 359 U.S. 500, 506-07). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989).

Irreparable harm must be certain and imminent such that there is a clear and present need for equitable relief. *Iowa Utils. Bd. v. F.C.C.,* 109 F.3d 418, 425 (8th Cir.1996). Possible or speculative harm is not sufficient. *See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.,* 61 F.3d 1347, 1355 (8th Cir.1995). Furthermore, the remedy at law must be inadequate. *Gen. Motors Corp.,* 563 F.3d at 319.

Although Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of temporary restraining orders and preliminary injunctions, the Eighth Circuit Court, has, however, held that "it is axiomatic that the federal courts lack plenary jurisdiction." *Southwestern Bell Tel. Co. v. Connect Communication Corp.*, 225 F.3d 942, 945 (8th Cir.2000). Rather, "[t]he inferior federal courts may only

exercise jurisdiction where Congress sees fit to allow it." *Id*. Courts, therefore, must resolve challenges to subject matter jurisdiction first. *United States v. Negele*, 222 F.3d 443, 446 (8th Cir.2000).

Moreover, because "[f]ederal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir.1993), a federal court has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL-CIO*, 962 F.2d 800, 802 n. 3 (8th Cir.1992); *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.*, 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n*, 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987).  Similarly, "[t]he parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court."  *Pacific Nat'l Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514, 516 (8th Cir.), cert. denied, 381 U.S. 912 (1965).  Thus, even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix*, 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v.*

*United States Farmers Home Admin.*, 992 F.2d 767, 771 (8th Cir.1993)). Therefore, before considering the merits of Plaintiffs' motion for temporary restraining order and preliminary injunctive relief under the *Dataphase* standards, the Court finds that it must address questions about its jurisdiction to hear the motion.

The court's scrutiny of its jurisdiction is not undertaken lightly. The jurisdictional question this Court finds it must confront involve the applicability of the *Younger* abstention doctrine. There is no dispute that at present, there is a pending state unlawful detainer action. The fact that state court proceedings, which were initiated first, are still on-going raises the question of the applicability of the *Younger* abstention doctrine. As the Eighth Circuit has explained,

> In *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. Under *Younger,* abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges. See *Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir.1996).

*Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 325 (8th Cir.1999), cert. denied, 529 U.S. 1038 (2000).

In *Younger*, the Supreme Court articulated the strong policy considerations that

counsel against the exercise of jurisdiction in the face of ongoing state proceedings:

> [T]he concept [of federalism] represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger*, 401 U.S. at 44, 91 S.Ct. 746. One reason for abstaining is that "[c]omity favors permitting the [state] court system to decide issues of state statutory law, and abstention is called for when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims." *Yamaha Motor Corp., U.S.A.. v. Shroud*, 179 F.3d 598, 603 (8th Cir. 1999); see also *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 477 n. 1 ("The *Younger* abstention doctrine ... directs federal courts to abstain from accepting jurisdiction in cases where equitable relief is requested and where granting such relief would interfere with pending state proceedings in such a way as to offend principles of comity and federalism."). "This rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions." *Stroud*, 179 F.3d at 603, (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)). A federal court's decision to abstain pursuant to *Younger* is reviewed for abuse of discretion. See *Stroud*, 179 F.3d at 602; *Night Clubs, Inc.*, 163 F.3d at 479.

As the Eighth Circuit explained in *Stroud*,

> Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of "bad faith, harassment, or other exceptional circumstances." *Middlesex*, 457 U.S. at 432, 437, 102 S.Ct. 2515.

*Stroud*, 179 F.3d at 602; *Night Clubs, Inc.*, 163 F.3d at 479 ("There are essentially three issues that must be addressed in determining whether to invoke the *Younger* abstention doctrine: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. See *Middlesex v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "If all three questions are answered affirmatively, a federal court should abstain unless it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate.' *Id*. at 435").

The first requirement for application of the doctrine is that there be an "on-going" state judicial proceeding. See *Stroud*, 179 F.3d at 602; *Night Clubs, Inc.*, 163 F.3d at 479-480 ("In addition to being judicial in nature, *Younger* requires that the state proceeding must be ongoing at the time the district court enters its order regarding abstention."). In the present case, there is no question that a state unlawful detainer action before the Missouri Courts, such as the one brought by Defendant

against Plaintiffs, is "judicial." Moreover, the parties did not dispute at the hearing before this court that the state unlawful detainer action is "ongoing." Thus, the first requirement for abstention is satisfied here.

The second requirement is that the state and federal proceedings must implicate "important state interests." *Stroud*, 179 F.3d at 602; *Night Clubs, Inc.*, 163 F.3d at 479. Eviction is a relatively complex procedure extensively regulated by state law, which dictates stringent notice requirements and the nature of the eviction proceedings themselves. Moreover, where the state has so extensively regulated the relationship between private parties, as it has in landlord-tenant law, the state has the further interest in determining, in the first instance, what defenses may appropriately be raised to an unlawful detainer action. Thus, the court is satisfied that the present action implicates important state interests, such that abstention may be appropriate.

The third requirement for application of the *Younger* abstention doctrine is that there must be an adequate opportunity in the state proceedings to raise constitutional challenges. *Stroud*, 179 F.3d at 602; *Night Clubs, Inc.*, 163 F.3d at 479. Thus, the question is whether the plaintiff in the federal action "could have raised" or "in fact did raise" his or her federal constitutional claims before the state court. *Night Clubs, Inc.*, 163 F.3d at 480. Here, there is no indication that Plaintiffs will be prevented from raising their discrimination claim in the unlawful detainer action, where there is

no indication in the record that the state court has ruled that they cannot assert a discrimination defense.

Plaintiffs contended, however, that they are precluded from asserting their constitutional claims as counterclaims or affirmative defenses in an unlawful detainer action. While counterclaims and affirmative defenses may be precluded, see *Lake in the Woods Apartment v. Carson*, 651 S.W.2d 556, 558 (Mo.App. 1983), Plaintiffs have failed to present any authority from which this Court could conclude that they would be precluded from obtaining complete relief through a different avenue in the state court.  Although unlawful detainer actions are summary in nature, such proceedings afford tenants a forum to tender certain defenses.  Where such a defense is rejected, it has been on the basis that the eviction proceedings are intended to be "summary" in nature, but in most such cases, the courts also recognized that the tenant still had the right to litigate a discrimination claim in the proper state forum and obtain complete relief.  *Lake in the Woods Apartment*, 651 S.W.2d at 558.  (rejecting the defense in eviction actions on the ground that other avenues to obtain relief were available).

Nor can the Court find "exceptional circumstances" counseling against *Younger* abstention. "[Exceptional circumstances making abstention inappropriate" include, for example, situations in which the state tribunal is "incompetent, biased, or otherwise

incapable of fairly interpreting the [state] statute in question." *Stroud*, 179 F.3d at 603. There is no evidence of such incompetence or bias here. Moreover, abstention is appropriate, for example, "when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims." *Stroud*, 179 F.3d at 603. As noted above, "This rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions." *Id*. Abstaining in the instant action will permit the state court to determine, in the first instance, whether discrimination by the landlord can be raised as an affirmative defense in a state unlawful detainer action, which would "foreclose the need to review at least [the equitable relief portions] of the plaintiff's federal claims" in this federal action. *Id*.

This Court's conclusion that abstention is appropriate is also in accord with federal decisions considering whether or not the court should abstain, under the *Younger* doctrine, from considering actions to enjoin state eviction proceedings on the basis of alleged discrimination or other conduct by the landlord in violation of federal law. See *Wood v. City of Hayward*, 974 F.2d 1344, 1992 WL 209550 (9th Cir.1992) (table op.) (the district court properly held that *Younger* abstention was appropriate where the plaintiff/tenant brought a claim pursuant to 42 U.S.C. § 1983 in which he claimed that he was being evicted from an airport hanger rented from the city in

retaliation for exercising First Amendment rights); *Residents of the New Ritz Hotel v. City of Chicago*, 2001 WL 58958 (N.D.Ill. Jan.22, 2001) (finding that the requirements for *Younger* abstention were met, and the tenant's claim that the state court's were not "minority friendly," without supporting facts, failed to establish an exception); *Miller v. Silberman*, 951 F.Supp. 485 (S.D.N.Y.1997) (*Younger* abstention was warranted in an action by landlords and landlord associations asserting federal civil rights violations against the judges and clerks of the New York City Housing Court); but see *Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F.Supp.2d 184 (E.D.N.Y.1999) (finding a "bad faith" exception to *Younger* abstention, even if the City could establish the other requirements for abstention, which the court doubted, although the case did not involve any "discrimination" claims); *Musko v. McClandless*, 1995 WL 262520 (E.D.Pa.1995) (unpublished) (the "bad faith" exception to *Younger* abstention permitted a federal suit alleging First Amendment violations and violations of the Americans with Disabilities Act in land-use actions to go forward)

    The court concludes that *Younger* abstention is appropriate in this case, at least until and unless Paintiffs demonstrate that they have been prevented from asserting discrimination as a defense in the ongoing unlawful detainer action in state court, thereby establishing that the third requirement for *Younger* abstention is lacking. This

does not, however, require dismissal of the present action, or even dismissal of the equitable relief portions of Plaintiffs' claims. Although "*Younger* abstention means that courts should not grant declaratory [or injunctive] relief that would interfere with pending judicial proceedings ..., [c]laims for damages are different ..., and a federal court may not decline to exercise jurisdiction over them, unless the damages sought would require a declaration that a state statute is unconstitutional." *Stroud*, 179 F.3d at 603 (internal citations omitted); *Night Clubs, Inc.*, 163 F.3d at 477 n. 1 (the *Younger* abstention doctrine applies to federal actions for equitable relief). Thus, "[w]hen monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed. As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining." *Id.* at 603-04. Because these are the circumstances that apply here, only a stay is appropriate in this case on Plaintiffs' claims for money damages, because there is no demonstration that, in order to grant relief, the court would have to declare any state statute to be unconstitutional. Moreover, the court will only stay Plaintiffs' claims for equitable relief, because it is possible that they will be able to demonstrate that they were actually foreclosed from asserting discrimination as a defense to the unlawful action.

The court finds that the *Younger* abstention doctrine is applicable to the plaintiffs' motion for a temporary restraining order or preliminary injunction. However, it is possible that, in the course of the state court unlawful detainer proceedings, they will be barred from asserting discrimination as a defense, thus making the *Younger* doctrine inapplicable.  Moreover, Plaintiffs have asserted claims for monetary relief in addition to injunctive or equitable relief.  In these circumstances, the appropriate course is for the Court to stay the present action until completion of the state court proceedings.

<u>Conclusion</u>

Based upon the foregoing analysis, Plaintiff's motion for a temporary restraining order or preliminary injunction is denied without prejudice and this action is stayed pursuant to the *Younger* abstention doctrine.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and  Preliminary Injunction, [Doc. No. 5], is denied, without prejudice.

**IT IS FURTHER ORDERED** that this matter is stayed until the resolution of

the pending state unlawful detainer action.

    Dated this 27th day of August, 2011.

                                           <u>/s/ Henry Edward Autrey</u>
                                       HENRY EDWARD AUTREY
                                  UNITED STATES DISTRICT JUDGE